UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **DAVID OWEN WATSON** | : | **DOCKET NO. 06-1784** |
| **VS.** | : | **JUDGE MINALDI** |
| **MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), the undersigned finds that the Commissioner's decision is not supported by substantial evidence and is therefore inconsistent with relevant legal standards. *See Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

On February 20, 2004, David Owen Watson ("Watson" or "Plaintiff") filed for Disability Insurance Benefits and Supplemental Security Income payments. (Tr. 67-70). He alleged an inability to work since September 1998,[1] due to the lingering effects of gunshot wounds, shrapnel in his body, constant pain in his back, pain and numbness in his legs, pain in his upper extremities, bleeding from medication and stomach ulcers, diarrhea and stomach cramps. (Tr.

---

[1] Watson filed prior applications for Disability Insurance Benefits and Supplemental Security Income in December 1992, which were granted by decision rendered October 24, 1994. He was found disabled due to anxiety disorders. Those benefits were terminated effective September 1998, which is the date he lists as the onset of his disability in this application.

72-83). His claims were denied at the initial level of the administrative process. (Tr. 24-27). Thereafter, Watson requested and was granted a hearing before an Administrative Law Judge ("ALJ"), which was held by video conference on April 11, 2006. (Tr. 11).

Watson was unrepresented at the hearing. He testified, as did Dr. George Weilupp, a medical expert ("ME"), and Lorie McQuade, a vocational expert ("VE"). In an April 27, 2006, written decision, the ALJ determined that Watson was not disabled under the Act, finding that he had a residual functional capacity ("RFC") for light work with some additional limitations, and could perform "light occupations . . . as well as sedentary unskilled job[s] . . . which exist in significant numbers in the state of Louisiana and in the national economy." (Tr. 16).

Watson appealed the adverse decision, informing the Appeals Council that he had asked the Social Security Administration ("SSA") for, and was continuing to attempt to locate, the file pertaining to his previous award of disability benefits. Watson believed documents in that file included relevant medical records which would show the extent of his physical and mental impairments.. However, on August 25, 2006, without receiving or reviewing these additional records, the Appeals Council denied Watson's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 3-5).

Watson filed for review of the unfavorable decision, claiming the following errors: that his waiver of representation should have been deemed invalid, that as he was unrepresented the ALJ should have developed the record on his behalf, and that as a result of failing to fully and fairly develop the record, the ALJ erred in assessing Watson's RFC, and that the ALJ used the flawed RFC to frame a flawed hypothetical to the VE.

## **STANDARD OF REVIEW**

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error.  *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.* at 401. The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards.  *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986).

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented him from engaging in any substantial gainful activity for at least twelve consecutive months.  42 U.S.C. § 1382c(a)(3)(A); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  A finding of no substantial evidence is appropriate only if there are no credible evidentiary choices or medical findings to support the decision.  *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988).  The reviewing court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232 (5th Cir. 1994).

## **LAW AND ANALYSIS**

The Commissioner evaluates disability claims under the Social Security Act through a five-step process:  (1)  Is the claimant currently working and engaged in substantial gainful activity?  (2)  Can the impairment or combination of impairments be classified as severe?  (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's

3

regulations? (If so, disability is automatic.)  (4) Does the claimant's residual functional capacity permit him to perform past relevant work?  and if not, (5)  Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920.  When a finding of "disabled" or "not disabled" is made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  The first four steps place the burden on the claimant.  At the fifth step, the burden shifts to the Secretary to establish that the claimant can perform other work.  If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.  *See  Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

**Issue 1:**       Validity of the claimant's waiver of right to representation and

A claimant has a statutory right to counsel at a Social Security hearing, but may waive this right if given sufficient information to enable him to decide intelligently whether to retain counsel or proceed pro se.  42 U.S.C. §  406.  "'Sufficient information' includes explanations of the possibility of free counsel, a contingency agreement, and the limitation on attorney's fees to 25% of past due benefits awarded."  *Clark v. Schweiker*, 652 F.2d 399, 403-04 (5th Cir. 1981); *Castillo v. Barnhart*, 325 F.3d 550 (5th Cir. 2003).  Mere lack of counsel will not overturn the ALJ's decision.  The claimant must show that prejudice or unfairness resulted from his lack of counsel.  *Clark*, 652 F.2d at 404; *Castillo*, 325 F.3d at 552.

In the instant case, Watson received notice of his right to an attorney plus an informational pamphlet regarding payment for attorneys and the possibility of free legal services on several occasions in advance of the hearing date.[2]  At the appeal hearing, Watson signed a waiver of representation which contained information regarding the possibility of free legal

---

[2] Notice of Decision – Unfavorable, April 27, 2006, at p. 2, ¶ "Your Right To Representation In An Appeal" (Tr. 9); Letter from Richard O. Litsey regarding ALJ hearing, August 11, 2004, at p.1, ¶ "Your Right To Representation" and Enclosures (Tr. 21-22); Letter from Horace L. Dickerson, Jr., Regional Commissioner regarding "The Decision on Your Case," July 6, 2004, at p. 3, ¶ "If You Want Help With Your Appeal" and Enclosures (Tr. 25-27).

4

services. (Tr. 44). The ALJ questioned Watson regarding waiver of representation, (Tr. 150-151), a colloquy Watson suggests is evidence of his desire to have representation.[3] Watson maintains that he would have had counsel but for his inability to afford an attorney, and cites *Clark v. Schweiker*, 652 F.2d 399 (5th Cir. 1981).

Watson's reliance on *Clark* is misplaced. The *Clark* court found that the plaintiff had not waived representation but instead had stated that she lacked representation because she was unable to afford an attorney. *Id.* In *Clark*, the plaintiff received only one notice of her right to counsel, which notice failed to mention the possibility of free representation and, according to the court, was drafted in a way that effectively discouraged the plaintiff from seeking representation. *Id.* at 403. Here, Watson received several communiques from SSA containing pamphlets describing contingency fee arrangements, fee-free representation, and explaining that any fee would be capped at 25% of back benefits due. On at least one occasion, he was furnished with a list of local organizations providing free legal services. Furthermore, Watson was given oral, albeit cursory, notification of his right to counsel at the hearing. Although Watson replied that he could not afford to pay an attorney at that time, which could be construed as his wish to have representation if it was affordable, he nevertheless signed a Claimant's Waiver of Right to an Attorney on the same date, which waiver also describes the possibility of obtaining legal representation without immediate payment and asks the claimant to verify that he

---

[3] "ALJ: Do you want to have a lawyer or do you want to represent yourself?
Watson: I hired a lawyer and for one year she didn't do anything, nothing. And then I had to go and sign a release because she wasn't going to do anything.
ALJ: So you want to represent yourself I take it?
Watson: I, I hate for somebody to take money and, you know, I need money right now bad. I need to go --
ALJ: I understand. That's fine. I don't care if you represent yourself or not. I just want to know what you want to do. Because, you know, that's how I do the hearing is I want to know if you want a lawyer. Because there ain't any point in me doing the hearing if you say you want a lawyer. You see what I'm saying?
Watson: Yes, sir.
ALJ: So if you don't want a lawyer we're going to go ahead and do the hearing right now.
Watson: Okay, sir."
(TR. 150-151).

understands what he is signing.  For those reasons, the undersigned finds that the numerous written notices Watson received, coupled with the ALJ's oral notification, sufficiently informed Plaintiff of his right to an attorney, and he validly consented to proceed without representation.

**Issue 2:**    The ALJ's obligation to fully and fairly develop the record

**A.**

Watson next argues that the ALJ failed to sufficiently develop the record by failing to acquire additional medical evidence that would have demonstrated the extent of Watson's impairments.  Furthermore, Watson contends that, because he is a *pro se* claimant, the ALJ had an enhanced duty to conduct the review of his claim in a full and fair manner.

It is well-settled that an ALJ bears a heightened responsibility to fully develop the record when reviewing dealing with pro se claimaints.

> The ALJ's 'basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with the hearing procedures appears before him.'  This duty requires the ALJ to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'  The failure of the ALJ to develop an adequate record is not, however, ground for reversal per se.  As in the case of a hearing held without waiver of the right to counsel, the claimant must, in addition, show that []he was prejudiced as a result of [a] scanty hearing. [H]e must show that, had the ALJ done his duty, []he could and would have adduced evidence that might have altered the result.

*Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (internal citations and quotations omitted); *see also Bowling v. Shalala*, 36 F.3d 431, 437 (5th Cir. 1994); *Wilson v. Barnhart*, 129 Fed. Appx. 912, 915 (5th Cir. 2005); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (*per curiam*).

Watson argues that he was prejudiced by the ALJ's failure to "associate [his] prior claim file with his current file," and argues that had the ALJ done so, "[i]t is certainly conceivable that . . . there would be medical evidence for the period from September, 1998 through September,

2003." Plaintiff's Brief in Support of Judicial Review. [Doc. 8]. A review of the record indicates that the ALJ determined that this period of time was relevant to the claim because the ALJ observed that there is "no objective medical evidence in the record from September 1998 through September 2003" to support the application. (Tr. 14).

Watson contends that he relied on the SSA to obtain medical evidence in connection with his application, but the SSA failed to request medical records for the relevant period between his impairments' alleged onset and the appeals hearing date. As the SSA did seek records for two periods, from March 2003 - March 2004 (Tr. 104, 123), and from December 2004 - May 2005 (Tr. 128), and as Watson authorized the SSA to obtain medical evidence relevant to his application, the ALJ should have developed the record by seeking any and all medical records for periods relevant to his determination.

Following the unfavorable determination by the ALJ, Watson retained an attorney for his appeal. Watson argues that had he had representation prior to the ALJ hearing, it is reasonable to assume that an attorney would have sought those missing records in time for the hearing, would have collected up-to-date medical records and other proof of Watson's various impairments, and at the hearing, with or without those additional documents, would have elicited additional testimony from Watson on his impairments. Furthermore, Watson argues, considering his hearing testimony, his mental health treatment history, and his prior favorable determination based on anxiety disorders, the ALJ should have ordered psychological testing to determine whether those disorders were continuing, and, if so, should have taken into account a non-exertional impairment in determining Watson's RFC and in posing a hypothetical to the VE.

The undersigned finds that the ALJ failed his duty to fully develop the record. In particular, the failure to obtain medical records concerning Watson's previous claim(s), and any

7

evidence pertaining to anxiety disorders and prior mental health treatment casts doubt upon the validity of the ALJ's decision, and whether it was based on substantial evidence.

**B.**

The ALJ's duty to fully and fairly develop the record may, at times, impose a duty to order an examination of the plaintiff. A consultative examination at government expense may be required if the record establishes that such an examination is necessary to enable the ALJ to make the disability decision. *Moreno v. Barnhart*, 2003 WL 22244971, *3 (W.D. Tex. 2003) (citing *Haywood v. Sullivan*, 888 F.2d 1463 (5th Cir. 1989)). The decision to require such an examination is discretionary, but may be made where the claimant "raises the requisite suspicion" that an examination is necessary for the ALJ to discharge his duty of full inquiry. *Haywood v. Sullivan*, 888 F.2d at 1472.

Throughout the hearing, Watson made many statements that should have raised suspicions. Watson stated that he had seen a doctor "from the mental health" who had said he "got problems." (Tr. 161). At times he rambled on about his fear of various people in authority and answered questions about his impairments with *non sequiturs* concerning these fears. (Tr. 157-161, 177-178). In response to the ALJ's question about whether he stayed all day in his trailer, Watson stated "No, no, I, my mother's right there next to me and that's, there's a lot more, that's why I'm telling you where I live, it's a lot more problems because of my sister and other stuff. It's my oldest sister's involved in a lot of illegal action and she's the one that's been next to my, my ex . . . They don't do nothing for her because they want what my daddy had left before he died." (Tr. 159-160). The ALJ asked if Watson liked fishing, and he answered "I'd be scared to go fishing if that's where they'd put a bullet in my head." (Tr. 160).

In addition, Watson responded in the affirmative to the ALJ's question about whether he

8

"just hang[s] around [his] mom . . . and do[es]n't ever get out". (Tr. 160). The ALJ asked Watson what else he wanted to tell him about his situation and why he can't work, and he stated "I can tell you about a person that worked for mental health for the state that is married to the Judge over there and his name is Craig Cole. And that, you could call him and I'm telling you, he'll tell you everything I'm telling you. He knows and he knows what I'm going through . . [he knows t]hat it's a bad situation where I'm living, a real bad situation." (Tr. 160-161). Watson went on to say that he can't work because he fears people, and in response to the ALJ's direct question, "[Is that] because you're afraid somebody might kill you?," Watson stated "[M]e and my mother went to court and a man that is known for a lot of stuff was going to try to do it to me and my momma unless I slammed on the breaks [sic]. And that, I just, some evil I'm telling you. It's some evil people and I can, there's murders tied up in this. There's people tied up in it. And my oldest sister's tied up in all this mess." (Tr. 161).

The ALJ then asked if and where Watson had seen a doctor about mental health issues, and whether he had any records regarding such visits. Watson said that he had seen a doctor in Oakdale, Louisiana, and that he had medical records at his home, but that he hadn't brought them with him as he "knew that they told [him] up there that they sent it." (Tr. 162). At he ALJ's direction, the ME looked through the file for mental health treatment records, finding some that mentioned Sasha Medical, LLC, Oberlin Medical Clinic. The ALJ then told the ME that he would be asked to testify about Watson's mental health based on the medical records. (Tr. 162-163). This testimony, however, revealed that the records from Sasha Medical concerned three months of treatment for back pain, related to Watson's gunshot wounds (Tr. 165-166), and did not include any information about treatment for fears or anxiety. The ME also noted that there was a comment on one of the medical records stating "he has post traumatic stress disorder," but

9

that no comments regarding the cause of PTSD, or how or if it was being treated were in the record. (Tr. 167). The ALJ did not question the ME about any work-related issues that might be caused by PTSD. The ALJ did not ask the ME to locate any additional mental health treatment records, he did not ask Watson to furnish him with medical records of anxiety disorder treatments, or ask whether he knew he had been diagnosed with PTSD. In fact, although he had raised the issue of Watson's fears, the ALJ did not return to anxiety disorder in his questioning of either the ME or of Watson.

The ALJ's sole finding regarding Watson's mental health is as follows: "The claimant alleged a mental impairment. However, there is no objective evidence to support his allegations. There is a history of some post-traumatic distress secondary to being shot by his wife, but no anti-social behavior. In addition, he is not seeking or receiving any ongoing psychiatric treatment or is taking any psychotropic medication." (Tr. 13).

Watson's prior application for benefits was granted on the basis of an anxiety disorder, therefore it is likely that associating Watson's prior claim file with this claim would have produced medical records evidencing his history of anxiety disorder. Watson's appeal brief and the transcript of the hearing both suggest that his manner and statements should have put the ALJ on notice that Watson might have a mental impairment requiring further review. Therefore a full and fair development of the record in his case should have included review of an updated independent mental health examination, which, because Watson was acting *pro se*, the ALJ should have scheduled on his behalf. The ALJ independently raised the issue of Watson's fears as they affected his ability to work during the hearing, in response to Watson's running stream of statements about worrying that he would be killed if he were to go out of his home or yard. However, the ALJ sought but did not find relevant mental health records in the file and he did

10

not attempt to locate additional records, even though the ME informed him that there was reference to a diagnosis of PTSD in the record.

When a claimant contends that an ALJ failed to properly develop the evidence of record, the courts will reverse for failure to develop the record only if a claimant shows that he was prejudiced as a result of the hearing. *Bowling v. Shalala*, 36 F.3d 431, 437 (5th Cir. 1994); *Kane v. Heckler*, 731 F.2d 1216, 1219-20 (5th Cir. 1984). "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing *Kane v. Heckler*, 731 F.2d at 1219). Here, Plaintiff has met his burden to demonstrate that additional evidence would have been produced and that such evidence might have altered the result. Thus, Watson was prejudiced by the ALJ's failure to fully develop the record and remand is warranted.

**Issues 3 & 4:** The ALJ's failure to fully develop the record resulted in an inaccurate RFC and a flawed hypothetical posed to the VE

Watson also contends that the failure to appreciate and understand the nature of Watson's mental impairment led to an inaccurate RFC and a flawed hypothetical. The ALJ did not ask either the ME or the VE whether Watson's RFC or ability to perform light work would be limited further by an anxiety disorder.

For the reasons discussed, it is clear that the ALJ should have produced additional evidence to fully developed the record. Such evidence of Watson's previous disability, along with the results of a consultative examination, might well have altered the assessment of Watson's RFC. Given the numerous factors pointing to the possibility of a non-exertional mental impairment that could have had an effect on Watson's RFC, the ALJ's failure to elicit sufficient testimony from Watson regarding his fears and mental health treatment for PTSD, his failure to

11

acquire the additional records in the keeping of the SSA or the mental health treatment records that Watson told him he had at home, and along with the ALJ's failure to frame a secondary hypothetical that incorporated psychological impairment, prejudiced Watson's claim. Therefore, because the ALJ failed to fully develop the possible effects such disorders could have on Watson's RFC and work options, the undersigned finds that the ALJ's decision was not based on substantial evidence and therefore does not meet relevant legal standards.

## CONCLUSION

For the reasons dicussed, the undersigned recommends that his matter be REMANDED to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to obtain a consultative evaluation of the claimant's mental impairments, and pose a proper hypothetical to a vocational expert, if needed.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 1st day of July, 2008.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE